O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDALL COWANS,<br><br>           Petitioner,<br><br>    v.<br><br>JOHN MARSHALL, Warden,<br><br>           Respondent. | ) Case No. CV 05-6276-RSWL (OP)<br>)<br>)<br>) MEMORANDUM OPINION AND<br>) ORDER<br>)<br>)<br>)<br>)<br>) |

**I.**

**PROCEEDINGS**

On August 26, 2005, Randall Cowans ("Petitioner"), filed a Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254 ("Petition"). Petitioner challenged the Board of Prison Terms'[1] ("Board" or "BPT") December 3, 2001, and January 30, 2003, decisions ("2001 Decision" and "2003 Decision"; collectively "Decisions") finding him unsuitable for release on parole.

On November 14, 2006, the Board found Petitioner suitable for parole and calculated his term at 348 months (twenty-nine years) for the base offense, plus

---

[1] The Board of Prison Terms now is part of the California Board of Parole Hearings.

1

twelve months for the weapon, for a total of 360 months (thirty years) ("2006 Decision"). The panel credited Petitioner with four months credit for every discipline-free year, for a total of eighty-four months (seven years), for a total period of confinement of 276 months (twenty-three years). (Pet'r's Mot for Release at 2, Appx. 1 at 105.) On April 9, 2007, the Governor reversed that decision. (Id. Appx. 2.)

On June 24, 2009, the Board held a further parole consideration hearing and again found Petitioner suitable for parole.[2] (Resp't's Mot. for Stay at 2.) That decision was expected to become final on October 24, 2009. (Resp't's Opp'n to Mot. for Release at 2.)

On June 29, 2009, this Court issued a Report and Recommendation of United States Magistrate Judge ("Report and Recommendation"), granting Petitioner's writ of habeas corpus. (Dkt. No. 46.) At the time, the Court was unaware of the Board's June 24, 2009, suitability finding and grant of parole. The basis for the recommendation was the Court's finding with regard to both the 2001 and 2003 Decisions that: (a) the Board's decisions resulted in an arbitrary deprivation of Petitioner's liberty interest in parole and violated due process; and (b) the State courts' determinations to the contrary was based on an unreasonable determination of the facts in light of the evidence presented and involved an unreasonable application of the "some evidence" standard (which the Court found to be clearly established federal law as determined by the United States Supreme Court).

Meanwhile, on August 31, 2009, over Respondent's objections, the Court issued an Order approving and adopting the Report and Recommendation. On the same date, Judgment was entered granting the writ of habeas corpus as follows:

---

[2] In between the 2006 and 2009 Board hearings, another parole hearing was held. The Board again denied release. (Reply to Opp'n to Mot. for Release at 4.)

> The Board shall find Petitioner suitable for parole at a hearing to be held within 30 days of the finality of this decision, unless new, relevant and reliable evidence of his conduct in prison or change in mental status subsequent to the January 30, 2003, parole consideration hearing is introduced that is sufficient to support a finding that Petitioner currently poses an unreasonable risk of danger to society if released on parole; and in the absence of any such new relevant and reliable evidence showing Petitioner's unsuitability for parole, the Board shall calculate a prison term and release date for Petitioner in accordance with California law.[3]
>
> Further, if the release date already has lapsed, Respondent shall, within ten days of the Board's hearing, either release Petitioner forthwith if his release date lapsed more than three years earlier, or release Petitioner on parole for that period of his three year parole term that remains if the release date lapsed less than three years earlier.

(Dkt. Nos. 54, 55.)

Respondent did not timely appeal the Court's August 31, 2009, grant of the writ of habeas corpus.[4]

On October 1, 2009, Petitioner filed a Motion for an Immediate Release Order ("Motion for Release"). (Dkt. No. 56.) On October 22, 2009, Respondent filed an Opposition to the Motion for Immediate Release. (Dkt. No. 57.) On October 24, 2009, the Governor declined to review the Board's June 2009 parole grant, allowing it to stand. (Resp't Mot. for Stay at 2.) On November 4, 2009, Petitioner filed a Reply to the Opposition to the Motion for Release. (Dkt. No. 58.)

---

[3] At the time it issued the Report and Recommendation, the Court was unaware of any of the Board decisions subsequent to the 2003 Decision or that the Board had calculated a release date in 2006.

[4] The Federal Rules of Appellate Procedure require a notice of appeal be filed within thirty days of the judgment. Fed. R. Civ. P. 4(a)(1)(A).

On November 10, 2009, the Court granted Petitioner's Motion for Immediate Release ("Order") and ordered Respondent to immediately release Petitioner from all custody by the State, without any accompanying period of parole. (Dkt. No. 59.)

On November 24, 2009, Respondent filed a Motion for a Stay of the Court's November 10, 2009, Order ("Motion for Stay"). (Dkt. No. 61.) Respondent does not seek a stay of the Order to immediately release Petitioner. Instead, Respondent seeks a stay pending appeal of that portion of the Order granting release without any accompanying period of parole. On December 2, 2009, Petitioner filed an Opposition to the Motion for Stay ("Opposition"). (Dkt. No. 64.)

For the reasons set forth below, the Court denies Respondent's Motion for Stay.

## II.

## **DISCUSSION**

**A.     Background.**

Respondent states that on June 24, 2009, when the Board found Petitioner suitable for parole, it imposed special parole conditions regarding gangs and substance abuse that were specific to Petitioner's history and the issues underlying the offense conduct. (Resp't's Mot. for Stay at 4.) Respondent contends these "special parole conditions" are proper, as there has been no finding by a court or the Board that Petitioner "may safely be released not only with no conditions of parole but with no supervision whatsoever." (Id. (citing Cal. Code Regs. tit. 15, § 2402(b)).)

This contention is not only disingenuous but misstates the record. The Court's August 31, 2009, Order adopting the Report and Recommendation specifically provided that since 2001 the State had not shown that Petitioner was a danger to society, and that if Petitioner's release date had lapsed more than three years earlier, then Petitioner should be released "forthwith," and only if it had not

lapsed was parole appropriate for that period of the three-year parole term remaining. (Dkt. Nos. 54, 55.) By clear implication, therefore, no parole or supervision was warranted if the release date had lapsed more than three years earlier. As Petitioner's release date calculated by the Board in its 2006 Decision fell into this category, any additional imposition of various parole or supervision terms were effectively mooted by this Court's Judgment on the Report and Recommendation and subsequent Order.

Despite this, Petitioner contends that on November 24, 2009, he was called into the counselor's office and advised that he had to sign a "lengthy list" of parole conditions or he would be denied release. (Opp'n at 5, 13.)

**B.    Analysis.**

Preliminarily, the Court agrees with Respondent that the Court has broad discretion in deciding whether to stay proceedings in its own court. (See Resp't's Mot. for Stay at 3.) The Court also agrees with Respondent that the standard to be applied is set forth in Hilton v. Braunskill, 481 U.S. 770, 107 S. Ct. 2113, 95 L. Ed. 2d 724 (1987). (Id.)

In Hilton, the Supreme Court held that the presumption of Rule 23(c) of the Federal Rules of Appellate Procedure in favor of the release from custody of a successful habeas petitioner pending appeal[5] may be overcome if the following traditional stay factors "tip the balance" against release: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the stay applicant will be irreparably injured absent a stay; (3) whether

---

[5] Federal Rule of Appellate Procedure 23(c) provides that, during the appeal of the grant of a habeas corpus petition, "the prisoner must-unless the court or judge ordering the decision, or the court of appeals, or the Supreme Court, or a judge or justice of either court orders otherwise-be released on personal recognizance, with or without surety." The United States Supreme Court held that Rule 23(c) "undoubtedly creates a presumption of release from custody in such cases." Hilton, 481 U.S. at 776.

issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. Id. at 776-77. The Hilton court further observed that in determining whether to release a petitioner from custody pending appeal a court could also take into consideration "the possibility of flight," whether the State has established "there is a risk that the prisoner will pose a danger to the public if released," and the "State's interest in continuing custody and rehabilitation pending a final determination of the case on appeal." Id. at 777. The Hilton court also noted:

> Where the State establishes that it has a strong likelihood of success on appeal, or where, failing that, it can nonetheless demonstrate a substantial case on the merits, continued custody is permissible if the second and fourth factors in the traditional stay analysis militate against release.

Id. at 778.

The Court notes, however, that this "enhanced" analysis under Hilton is typically based on the issue of whether a successful habeas petitioner should be released from custody pending appeal. Petitioner's case is in somewhat of a different posture, as there is no dispute about whether he should be released from custody, only whether he should be on parole pending appeal. Thus, while the Court believes the four traditional Hilton factors themselves are nevertheless applicable in determining whether to stay the disputed portion of the Order, the additional factors of flight risk, risk of danger, and the State's interest in continuing rehabilitation, are arguably not even relevant to this issue. However, as the balance tips in favor of Petitioner even considering these enhanced factors, the Court will consider them to the extent they relate to continued parole supervision after release.

**1.    Respondent Fails to Establish a Strong Likelihood of Success on the Merits.**

1    The Court finds that Respondent has failed to establish "a strong likelihood
2 of success on appeal" with respect to the sole contention that this Court improperly
3 provided for credit against Petitioner's mandatory three-year parole period.
4    In examining the available remedies for habeas relief, the Court notes that
5 "federal habeas courts have 'broad discretion in conditioning a judgment granting
6 habeas relief' and in 'dipos[ing] of habeas corpus matters 'as law and justice
7 require.'" Milot v. Haws, 628 F. Supp. 2d 1152, 1156 (C.D. Cal. 2009) (quoting
8 Hilton, 481 U.S. at 775); see also Burnett v. Lampert, 432 F.3d 996, 999 (9th Cir.
9 2005) (stating that federal courts "have a fair amount of flexibility in fashioning
10 specific habeas relief"); Sanders v. Ratelle, 21 F.3d 1446, 1461 (9th Cir. 1994)
11 (noting that federal habeas court is vested with the largest power to control and
12 direct the form of judgment to be entered).
13    The district court observed in Milot that recent decisions by the California
14 courts suggest that California law permits for remedies beyond a new hearing,
15 including immediate release, without restrictions on the Board's or Governor's
16 consideration. Milot, 628 F. Supp. 2d at 1156 (citing Adams v. Schwartz, No. CIV
17 S-05-2237 JAM JFM P, 2008 WL 4224561, at *16 (E.D. Cal. Sept. 12, 2008)),
18 Report and Recommendation adopted at 2008 WL 4601088 (Oct. 14, 2008);[6]
19 Opalec v. Curry, 556 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008) (district court
20 ordered Board to calculate a term and set a release date within sixty days of order);
21 Masoner v. State, No. CV 03-1261-ER, 2004 WL 1080177, at *2 (C.D. Cal. Jan.
22 23, 2004) (district court ordered Board to grant inmate a parole date within thirty
23 days "unless legitimate post-conviction evidence [could] be found to suggest that

---

[6] The Ninth Circuit docket on this case reflects that the Ninth Circuit denied Respondent's motion for stay of the district court order and ordered Adams' immediate release pending Respondent's appeal (which itself was stayed).

his release would pose a danger to public safety").[7]

As for Respondent's contention that this Court has no authority to credit Petitioner for time spent on parole, the Ninth Circuit has held otherwise. Milot, 628 F. Supp. 2d at 1157-58 (citing McQuillion v. Duncan, 342 F.3d 1012, 1015 (9th Cir. 2003) (if inmate not immediately released, his sentence would have been lengthened by ordering him to serve a parole term where he had already served more time in prison than his lawful period of imprisonment and parole combined); see also Tripp v. Cate, No. C 07-05748 CW, 2009 WL 248368, at *12 (N.D. Cal. Feb. 2, 2009) (ordering Department of Corrections to calculate parole term based on 2004 suitability finding notwithstanding the fact that inmate was released in 2008); Yu v. Marshall, No. CV 08-5852-GHK (RNB), 2009 WL 711959 (C.D. Cal. Mar. 17, 2009).

In support of this argument, Respondent cites to In re Bush, 161 Cal. App. 4th 133, 142-43 (2008), noting that under California law the base term calculated by the Board does not reflect the date when Petitioner should have been released. (Id.) Bush, however, does not support Respondent's request for stay. In fact, the Bush court distinguished the petitioner's situation from that of the petitioner in McQuillion, noting that the McQuillion court had determined that the petitioner was not lawfully in custody during the nine years following his original parole date because the rescission of that date was not supported by "some evidence." In re Bush, 161 Cal. App. 4th at 145. In contrast, the petitioner in Bush was "lawfully in custody pending a determination that he could be safely paroled." Id. Because this Court determined that Petitioner had not been lawfully in custody since 2001 because "some evidence" did not support either the Board's 2001 or 2003

---

[7] Respondent's request for a stay of the district court's order was denied. Masoner v. California, No. 03-1261-ER, 2004 WL 1080176 (C.D. Cal. Mar. 5, 2004).

1 Decisions, Petitioner's situation herein is equivalent to that of the petitioner in
2 McQuillion, and Bush simply is not applicable.  See also Milot, 628 F. Supp. 2d at
3 1157-58 (crediting the petitioner for time spent on parole) (citing McQuillion, 342
4 F.3d at 1015; Tripp, 2009 WL 248368, at *12).

Accordingly, Respondent has failed to demonstrate a strong likelihood of success on the merits on appeal.[8]

### 2. **Enforcement of the Judgment Will Not Result in Irreparable Injury to Respondent.**

Respondent does not appear to present any significant argument that he or the State will be irreparably injured absent a stay of that part of the Court's Judgment relating to parole supervision.  Respondent merely notes that Petitioner could freely leave the state or country if released without parole supervision which would leave Respondent with "no information as to Cowans['] whereabouts," and frustrate the purpose of Respondent's appeal (which apparently is to ensure that Petitioner serve a period of parole when released).  (Resp't's Mot. for Stay at 7.)  Petitioner states that upon discharge he plans to reunite with his family, and has "fought for his freedom, not the mobility to commit new crimes."  (Opp'n to Mot. for Stay at 12.)

In any event, the Court finds no evidence of potential irreparable injury to Respondent if the stay is not granted.  In granting habeas relief, this Court already has found that the Board and/or Governor exercised their "legislatively and constitutionally mandated functions" in an unconstitutionally arbitrary manner and

---

[8] Respondent contends that this Court's Order granting Petitioner's Motion for Immediate Release "granted relief in part based on Cowans's assertion that the Governor would repeatedly reverse his parole grants despite court orders."  (Mot. for Stay at 5.)  That discussion, however, had no bearing on the Court's decision to release Petitioner with no period of parole.  Instead, it related to whether the Court would give the Governor an opportunity to review this Court's determination that Petitioner should be released.

that the California courts' conclusion to the contrary involved an unreasonable application of clearly established Supreme Court law.  Moreover, while the Supreme Court did indicate in <u>Hilton</u> that the risk of flight is an appropriate consideration in determining whether a stay of release should be granted, Respondent provides no evidence, let alone credible evidence, that Petitioner, an exemplary prisoner, now age fifty-one, with strong family ties and viable parole plans, is a significant flight risk if released without supervision pending Respondent's appeal to the Ninth Circuit.  <u>See, e.g.</u>, <u>Franklin v. Duncan</u>, 891 F. Supp. 516, 521 (N.D. Cal. 1995) (rejecting State's argument that release of successful habeas petitioner from custody pending appeal would pose a risk of flight, where the State "presented no evidence that [the petitioner] poses a particularized flight risk").

Nor does the Court believe that the issue on appeal, constituting a dispute as to whether Petitioner should be subject to parole conditions upon release (<u>see</u> Opp'n at 12), provides any legitimate incentive for Petitioner to flee the state or country while that appeal is pending.

### 3.   **A Stay Is Not in the Public Interest.**

The Court also finds unpersuasive Respondent's contention that a stay is necessary because Petitioner's release and discharge from parole "thwarts the legislative intent for parole" and because Petitioner falls among that group of prisoners, "incarcerated for a long time due to their public safety risk," "who are most in need of supervision and assistance."  (Resp't's Mot. for Stay at 6.)

Preliminarily, the Court notes that its rationale for finding that Petitioner's constitutional rights were violated was that there was no reliable evidence before the Board supporting its conclusion that Petitioner's release posed an unreasonable risk of danger to society or a threat to public safety.  In fact, the evidence before the Board and the Governor was all to the contrary.  Moreover, while the Court agrees in theory that, as with any prisoner who has served many years in prison,

Petitioner may experience some degree of difficulty readjusting to civilian life without State "resources" to ease this transition, the State may determine that the public interest is furthered by offering Petitioner assistance such as lodging, employment, medical care, counseling, vocational training and other services during the pendency of the appeal. The Judgment does not preclude the State from offering such services or Petitioner from voluntarily accepting those services.

Nor, in the Court's view, has Respondent established that Petitioner's release without parole conditions significantly infringes on California's interest in the administration of criminal justice. (Resp't's Mot. for Stay at 7 (citing Chioino v. Kernan, 581 F.3d 1182 (9th Cir. 2009).) As the district court observed in Milot, recent decisions by the California courts suggest that California law permits for remedies beyond a new hearing, including immediate release, without restrictions on the Board's or Governor's consideration. Milot, 628 F. Supp. 2d at 1156. For this reason, Respondent's reliance on Chioino is unavailing. In Chioino, the district court granted a petition for writ of habeas corpus, determining that there had been sentencing error under Cunningham v. California, 549 U.S. 270, 127 S. Ct. 856, 166 L. Ed. 2d 856 (2007). Chioino, 581 F.3d at 1183-84. The district court then ordered the upper-term sentence reduced to a middle-term sentence, which violated California's reformed sentencing system. That reformed system had eliminated the presumption for a middle-term sentence and gave the trial court discretion to impose the upper term on Cunningham remand without a jury trial on the factual findings. The Ninth Circuit reversed, holding that the remedy for Sixth Amendment error under Cunningham was remand to the state trial court of resentencing. Id. at 1186. In contrast, as discussed by the court in Milot, the remedies available in the parole context for parole decisions that violate due process, under both California and Ninth Circuit case law are wide-ranging and not so limited. See Milot, 628 F. Supp. 2d at 1156.

The Supreme Court has noted that "[t]he State's interest in continuing

1  custody and rehabilitation pending a final determination of the case on appeal . . .
2  will be strongest where the remaining portion of the sentence to be served is long,
3  and weakest where there is little of the sentence remaining to be served." Hilton,
4  481 U.S. at 777.  Here, Petitioner's prison and parole terms have effectively been
5  completed long ago.  While imprisoned, Petitioner obtained his GED, took
6  advantage of numerous rehabilitation and enrichment programs, and received
7  favorable behavior and work reports.  To continue to encourage these proactive
8  behaviors, and without evidence that Petitioner poses a danger to the public,
9  Petitioner's commitment to rehabilitation while incarcerated suggests the public
10 interest in this case weighs more heavily toward the immediate unsupervised
11 release of someone who has been incarcerated in violation of the Constitution.
12      In short, as evidenced by this Court's finding that Petitioner does not
13 presently constitute a danger to society, as well as the two subsequent identical
14 findings by the Board and, by implication, the Governor who declined to review
15 the Board's recent grant, it appears that the California Department of Corrections
16 and Rehabilitation has done its job well and successfully rehabilitated Petitioner.
17      Accordingly, the Court finds that the public interest in this case does not
18 weigh in favor of keeping Petitioner imprisoned.
19      **4.   Petitioner Will Be Substantially Injured If a Stay Is Granted.**
20      Finally, the Court rejects Respondent's contention that a stay pending appeal
21 will not substantially injure Petitioner (i.e., the third Hilton factor) "because he
22 would still be released from prison," and "would be subject to the conditions of
23 parole imposed by the Board and receive the state resources available to parolees."
24 (Resp't's Mot. for Stay at 7-8.)
25      Respondent's concern for Petitioner's receipt of "state resources" upon
26 release has been addressed in the Court's discussion regarding to the public interest
27 factor.  (See Discussion supra Part II.B.3.)  As set forth by the parties, the
28 restrictions to be imposed include, among other things, the following:

12

1 • Petitioner's job must be approved;
2 • any job changes must be approved;
3 • a restriction on travel outside a fifty-mile radius for at least ninety days;
5 • a restriction on visiting family outside that radius during that time;
6 • a restriction on visiting family at all if they live outside of California;
7 • a condition that a parole officer may come to his home and place of employment; and
9 • a condition that a GPS tracking monitor may be placed on him "for years to come, and so on and so forth."

(See Pet'r's Opp'n to Mot. for Stay at 13.) Respondent also notes that the Board imposed "special parole conditions regarding gangs and substance abuse (Resp't's Mot. for Stay at 4), and stated that Petitioner would be subject to "testing and treatment which would protect public safety and aid [Petitioner] in his transition from prison life" (id. at 7).

Again, the Court (and two Board panels and the Governor) have all determined that Petitioner does not pose a risk of danger to the public. Based on the above, the Court finds that Petitioner faces significant harm if a stay of the Court's Order prohibiting parole supervision is granted.

### III.
### CONCLUSION

Based on the foregoing, the Court denies (1) Respondent's Request to Stay the Court's November 10, 2009, Order prohibiting parole supervision of Petitioner; and (2) Respondent's request for a stay pending appeal of that portion of the November 10, 2009, Order prohibiting parole supervision of Petitioner.

1 **IT IS SO ORDERED.**

3 DATED: December 10, 2009	/S/ RONALD S.W. LEW
	HONORABLE RONALD S.W. LEW
	Senior United States District Judge

Presented by:

_/s/_

HONORABLE OSWALD PARADA
United States Magistrate Judge